DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| GIA GILBERT, | § |
| Plaintiff, | § § § |
| v. | § § |
| EQUIFAX, INC., CARLETON-SONTERRA PARTNERS, LTD., TOLTECA ENTERPRISES, INC. d/b/a THE PHOENIX RECOVERY GROUP, | § § § § § § |
| Defendants. | § § |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR MONETARY AND PUNITIVE DAMAGES**

Plaintiff Gia Gilbert ("Ms. Gilbert" or "Plaintiff") files this complaint against Defendants Carleton-Sonterra Partners, Ltd. ("Defendant Carleton"), Tolteca Enterprises, Inc. d/b/a Phoenix Recovery Group ("Defendant Phoenix"), and Equifax, Inc. ("Defendant Equifax") (collectively "Defendants"), and, in support thereof, states as follows:

**INTRODUCTION**

1. This Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code. §§ 392-392.404; and the Deceptive Trade Practices Action ("DTPA"), Tex. Bus. & Com. Code §§ 17.41-17.63. Defendants failed to verify and validate a debt, reported the debt to credit reporting bureaus, and failed to delete the debt despite receiving proof that it was invalid.

2. The FCRA imposes duties on credit reporting agencies ("CRAs") and furnishers of information to those CRAs to report consumer information with "maximum possible accuracy." One of the purposes of imposing this duty is to ensure public confidence and the stability of the banking system. 15 U.S.C. § 1681(a)(1). In addition, finance companies and

employers rely on information provided by CRAs. As such, another purpose at the heart of the FCRA is to preserve the good names of consumers.

3. In applying for adequate housing, employment, and transportation, consumers are at the mercy of information contained in computer databases, under the control of CRAs. When inaccurate information is contained in those databases and consequently reported to numerous creditors and employers, the name of the consumer is systematically, institutionally, and uncontrollably ruined, as occurred here.

4. The inaccurate information takes on a life of its own and requires exhaustive efforts on the part of consumers to correct, a long, merry-go-round ordeal involving numerous and time-consuming communications with various agencies and parties, dealing with each agency and party referring the consumer to each other same agency and party, and filing numerous reports, complaints, and documents with still more agencies, all with the knowledge it may all still be to no avail. This merry-go-round ordeal can take years, after which time the consumer is not just financially damaged, but also emotionally, physically, and socially drained and damaged as well.

5. As alleged in this Complaint, Defendant Phoenix furnished information to Defendant Equifax, a CRA, that Ms. Gilbert owed a debt related to an apartment rental lease. The information was false.

6. As was her right under the FCRA, Ms. Gilbert disputed the debt and requested that Defendant Phoenix validate the debt from the very first communication with Defendant. Defendant Phoenix illegally ignored her request, illegally ignored verification of the debt, and, instead, illegally reported the debt to the CRAs. The debt was in fact invalid.

7. Even after twice being notified by the original creditor involved that Ms. Gilbert did not owe the debt, Defendants failed to follow-up, investigate, and delete the debt from her credit report for over a year.

8. For over a year, the negative report therefore affected Ms. Gilbert's ability to obtain adequate housing, employment, and transportation. Specifically, as a result of the invalid

report, she was denied affordable motor vehicle financing, the opportunity to refinance, furnish, and renovate her home, and the opportunity to seek employment without the specter of her invalid credit report dampening her confidence. Ms. Gilbert reasonably felt helpless, frustrated, and despondent.

9. This action seeks declaratory, compensatory, statutory, and punitive damages, and costs and reasonable attorneys' fees for Ms. Gilbert against Defendants for their negligent, willful, and knowing violations of the FCRA, FDCPA, TCPA, and the DTPA.

## PARTIES

10. At all relevant times, Ms. Gilbert is a natural person who resides in San Antonio, Texas.

11. At all relevant times, Defendant Phoenix is a Texas corporation engaged in debt collection throughout the state of Texas. Process may be served on Defendant Phoenix at Frank Gamboa, Registered Agent of Tolteca Enterprises, Inc. d/b/a The Phoenix Recovery Group, 2939 Mossrock, Suite 220, San Antonio, Texas 78230.

12. At all relevant times, Defendant Carleton-Sonterra Partners, Ltd., is a Texas limited partnership engaged apartment rentals throughout Texas. Process may be served at David Cohenour, Registered Agent, 5485 Belt Line Road, Suite 300, Dallas, TX 75254.

13. At all relevant times, Defendant Equifax is a Georgia limited liability company transacting business in the state of Texas and throughout the country. Process may be served on Defendant Equifax at The Prentice-Hall Corporation System, Registered Agent of Equifax, Inc., 211 East 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

14. As this action arises under federal and state laws, jurisdiction lies pursuant to 28 U.S.C. §1331 and 20 U.S.C. § 1367(a).

15. Venue lies in the United States Court for the Northern District of Texas pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this District and is therefore subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

16. On February 2, 2015, Ms. Gilbert entered into an apartment lease contract with Defendant Carleton, a lease managed by Lincoln Property Company (the "Lease"). Attached as **Exhibit A** is a true copy of the Lease.

17. On October 21, 2015, Ms. Gilbert was in the process of closing on a home she purchased. She gave Defendant Carleton notice of early termination of her lease. Defendant Carleton informed her of the process, procedure, and costs to terminate. Ms. Gilbert complied and she terminated with a zero-balance account at the end of November 2015.

18. Ms. Gilbert then moved into her new home, hoping to renovate, furnish, and decorate the home for her family.

### *Defendant Phoenix Illegally Collected on a Zero-Balance Account*

19. On December 4, 2015, within weeks of moving into her new home, Defendant Phoenix called Ms. Gilbert on her cell phone. Defendant demanded money for an alleged debt from Defendant Carleton for $6,977.00 (the "Debt"). Ms. Gilbert received neither a statement of account nor notice of any past due amount at any time from Defendant Carleton.

20. Ms. Gilbert told Defendant Phoenix that she never received any notice of the Debt, as required by law. Defendant Phoenix represented a notice was sent out in November 2015.

21. In November 2015, Ms. Gilbert however was still in the apartment, still paying rent on the lease, and could not have incurred any Debt with the Defendant Carleton, even in relation to the termination of the lease. She therefore disputed the Debt.

22. Defendant Phoenix reviewed the Debt based on a copy of the lease. Defendant Phoenix could not point to any actual statement of any account, bills, or past-due notices. Defendant referred solely to a copy of the lease during the entire conversation on December 4, 2015.

23. Since Ms. Gilbert could not have had a debt in November 2015 and did not receive any notice of any debt, Ms. Gilbert became suspicious and requested Defendant Phoenix

send her its documents validating the Debt. Ms. Gilbert therefore disputed the Debt. She informed Defendant Phoenix its information was inaccurate, that she did not owe the Debt, and that she had cleared her account with Defendant Carleton upon termination of the lease.

24.     Ms. Gilbert requested Defendant Phoenix provide her documents proving she owed the Debt. She specifically requested a debt validation, as she was entitled to under the law.

*Defendant Phoenix Illegally Refused to Validate the Debt*

25.     Since the December 2015 conversation, Defendant Phoenix did not provide validation documents from Defendant Carleton, much less within the 5-day or 30-day prescribed timeframe for validating a debt. Under the law, Defendant Phoenix's should have responded to Ms. Gilbert's request for a debt validation within 30 days of the request, up to and including January 3, 2016. By January 3, 2016, however, Defendant Phoenix had served no debt validation.

26.      Moreover, Defendant Phoenix did not cease collection efforts as required by the law when a dispute has been made on a debt. Defendant continued to call Ms. Gilbert on her cell phone to collect on the Debt.

27.     On January 21, 2016, a month after the first request, Ms. Gilbert made a second request for debt validation, this time in writing. She faxed the letter and confirmed receipt (the "Second Debt Confirmed-Receipt Validation Request"). Attached as **Exhibit B** is a true copy of the Second Debt Confirmed-Receipt Validation Request.

28.     Defendant Phoenix did also not respond to this written debt validation request, much less within the prescribed 30-day period, up to and including February 20, 2016.

29.     By February 20, 2016, Ms. Gilbert received no response to her letter requesting a validation of the Debt.

30.     On February 4, 2016, Defendant Phoenix contacted Ms. Gilbert again on her cell phone regarding payments on the Debt. Ms. Gilbert stated that she had disputed the debt and Defendant Phoenix must cease collections. Defendant Phoenix responded that the account was not noted as in dispute in its system. Ms. Gilbert stated she had faxed written notice of the

dispute on January 21, 2016 and had confirmation that the written notice was received by fax by Defendant Phoenix. At this point Defendant needed to respond to Ms. Gilbert's debt validation request and cease collection efforts.

31. Not in fact ceasing its collections efforts however, Defendant threatened to report the invalidated Debt to CRAs if Ms. Gilbert did not make immediate payments.

***Defendant Phoenix Illegally Reports the Invalidated Debt to CRAs***

32. On February 5, 2016, Defendant Phoenix in fact reported the Debt to all major credit reporting agencies, including Trans Union, Experian and Equifax. Even though Defendant had not verified the Debt with Ms. Gilbert, Defendant represented to the CRAs that the Debt was verified. Defendant also did not represent to any CRA that the Debt was in dispute, as required under the law. The CRAs accordingly did not represent the Debt as in dispute.

33. Ms. Gilbert disputed the debt with all the major CRAs. Each time Defendant Phoenix validated the debt with the CRA but still not with Ms. Gilbert, and the Debt remained on her credit report.

34. On February 9, 2016, looking for relief from Defendants' illegal actions, Ms. Gilbert filed a complaint with the Consumer Financial Protection Bureau ("CFPB") against Defendant Carleton, Defendant Phoenix, and Defendant Equifax (the "CFPB Complaint"). See attached as **Exhibit C** a copy of the CFPB Complaint.

35. In response, Defendant Phoenix represented to the CFPB that it mailed verification of the debt, marked the account as in "dispute", and honored Ms. Gilbert's request to cease communication.

36. All CRAs thereafter permanently removed the Debt, except for Defendant Equifax.

37. On July 21, 2016, Ms. Gilbert wrote Defendant Phoenix again requesting a validation of the debt, which validation to this third request was due on July 31, 2016. She did not receive a validation. In addition, the date Defendant Phoenix represented to CFPB that it

responded to the debt validation request was August 10, 2016, which Ms. Gilbert did not receive.

### *Defendant Carleton Invalidates the Debt*

38. The Report was affecting Ms. Gilbert's ability to buy a car.

39. On or about September 14, 2017, Ms. Gilbert contacted by email Defendant Carleton, the original creditor, hoping it could speak to Defendant Phoenix and help fix her false credit report.

40. On September 14, 2016, Defendant Carleton emailed back and indicated it in fact had no information on the Debt in its records and that it was invalid.

41. Defendant Carleton also advised that Defendant Phoenix never contacted its office to validate the Debt, and, that even if Defendant Phoenix had contacted its office, it could not have validated the Debt (the "First Debt Invalidation"). See attached as **Exhibit D** is a true copy of the First Debt Invalidation.

42. The issue appeared to have finally been resolved. With the original creditor Defendant Carleton invalidating the Debt, Ms. Gilbert thought that now Defendant Phoenix and Defendant Equifax would finally delete the Debt from her credit report. Ms. Gilbert thought she could finally continue with her plans to apply for an equity loan to renovate her home, apply for a car loan, and get on with her day-to-day activities without worrying about the Debt on her credit report.

### *The Invalid Debt is Still Illegally on Ms. Gilbert's Credit Report*

43. On or around February 17, 2017, after several denials on her credit applications for various types of credit, Plaintiff learned the invalidated Debt was in fact still on her credit report.

44. She contacted Equifax and informed Equifax that the information in the Report by the Phoenix Recovery Group was false. Equifax did not correct the information.

45. Even after notification from the original creditor Defendant Carleton that the Debt was invalid, Defendant Phoenix and Defendant Equifax's system continued to report the invalid Debt.

46. One February 20, 2017, original creditor Defendant Carleton again emailed Defendant Phoenix telling it to delete the Debt from Ms. Gilbert's report (the "Second Debt Invalidation"). See attached as **Exhibit E** a true copy of the Second Debt Invalidation.

47. Defendant Phoenix several times requested Equifax delete the Debt from Ms. Gilbert's credit report. In communications on September 29, 2016 and on February 20, 2017, Defendant Phoenix indicated its system sent two deletion letters to Equifax (the "Deletion Letters"). See attached as **Exhibit F** a true copy of the Deletion Letter.

48. On February 20, 2017, Defendant Phoenix finally offered to send Ms. Gilbert a debt validation that was allegedly sent on August 10, 2016, well after the 30-day timeframe of any request. Defendant Phoenix also acknowledged there was no Debt, as the paperwork showed zero-balance due on the account (the "Defendant Phoenix's Acknowledgement"). Attached as **Exhibit G** is a true copy of the Defendant Phoenix's Acknowledgement.

49. On May 6, 2017, Defendant Equifax still reported the Debt (the "Credit Report"). Attached as **Exhibit H** is a true copy of the Credit Report.

*Ms. Gilbert's Financial and Mental Demoralization*

50. For over a year, from February 5, 2016, when the illegal reporting by the Defendants began, to on or about after May 6, 2017, when it dropped off her credit report, Ms. Gilbert was effectively seized from using her credit. Ms. Gilbert was emotionally distraught during this time. She felt frustrated, helpless, and despondent. Despite the inaccuracy of the Debt, the proof of its inaccuracy, and her complaint with the CFPB, the Debt still trailed her whenever she went. She wanted to renovate, update and repair her home, buy a car, and make several purchases on credit, plans she put on hold for over a year pending the removal of the false Debt from her credit report (the "Damages"). See attached as **Exhibit I** a true copy of the Damages.

51. Specifically, Ms. Gilbert was denied credit opportunities for a real estate equity loan on or around April 16, 2017. She did not use her credit for fear she would get denied. She therefore was denied the opportunity to apply for credit for an equity loan against her home,

funds she needed to renovate her home. She was also denied the opportunity to obtain financing for purchases for her home.

52.   In August 2016, Ms. Gilbert's credit application for a car loan was denied by 10-17 creditors when she attempted to purchase a new car, a car she desperately needed to travel to work, drive her family around, and run errands. The repeated inquiries and further denials further reduced her score but she had no choice but to continue shopping around as she desperately needed a new car.

53.   The denials were based on, caused by, and directly related to the inaccurate credit report by Defendants. One creditor, First Investor's Financial Services, Inc., specifically cited a credit report by Defendant Equifax, which listed the Debt as a recent serious delinquency or collection filed (the "Denial Letter"). Attached as **Exhibit I** is a true copy of the Denial Letter.

54.   On August 2016, when Ms. Gilbert was eventually approved for a car loan by Chase, she was charged a 24% interest rate, a rate she continues to pay to date.

55.   The invalid Debt, the time and effort spent to remove the invalid Debt to no avail, and the brakes it put on her plans, daily affected Ms. Gilbert's demeanor, her interactions with her family, with her employer and work colleagues, and caused hardship to Ms. Gilbert and her family. The long ordeal culminating in this litigation that involved numerous emails with Defendants, numerous phone calls, and numerous letters and complaints, created significant stress in her life. It took time away from important things she needed to do, such as focusing on her family, her home, and her employment. Defendants illegal actions therefore caused significant financial and emotional losses.

56.   Defendant Phoenix also called Ms. Gilbert several times, including in the early morning and late evening hours, on the weekends, at home, and at her job, harassing her about the invalid Debt.

57.   All conditions precedent to the filing of this lawsuit have been complied with.

58. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

## COUNT ONE
## VIOLATION OF THE FCRA
## 15 U.S.C. § 1681S-2
## (AGAINST DEFENDANT *PHOENIX*)

59. Plaintiff incorporated by reference paragraphs 1-58 of this Complaint as though fully set forth herein.

60. 15 U.S.C. § 1681s-2 of the FCRA describes the duties of furnishers to provide accurate information to CRAs.

61. Plaintiff is a "consumer" under 15 U.S.C. § 1681a(b)-(c) because Plaintiff is an individual.

62. As contemplated by 15 U.S.C. § 1681a(b)-(c), Defendant Phoenix is a person.

63. Defendant Phoenix violated 15 U.S.C. § 1681s-2(a)(1)(A) prohibition against reporting information with actual knowledge of errors because it knew or had reasonable cause to believe that the information was inaccurate. Specifically, the numerous notifications by Ms. Gilbert and the original creditor imparted knowledge and/or reasonable cause to believe that the information was inaccurate.

64. Defendant Phoenix violated 15 U.S.C. § 1681s-2 (a)(1)(B) prohibition against reporting information after notice and confirmation of errors. In numerous instances, Ms. Gilbert contacted Defendant Phoenix, at the address specified by Defendant Phoenix, to dispute information about her furnished by Defendant Phoenix to a CRA, and to notify Defendant Phoenix that the information was inaccurate. In numerous instances, Ms. Gilbert and the original creditor provided information that information about the Debt as reported by the CRAs on her credit report was inaccurate.

65. Despite having proof from the consumer to the contrary, in numerous instances, Defendant Phoenix continued to furnish information to a CRA relating to Ms. Gilbert when (a)

Defendant Phoenix was notified by Ms. Gilbert at an address specified by Defendant Phoenix that specific information was inaccurate and (b) the information, was in fact, inaccurate.

66. Defendant violated 15 U.S.C. § 1681s-2(a)(2) because it determined that the Debt was inaccurate and failed to promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to agency complete and acute, and thereafter furnished to the agency any of the information that remained incomplete and inaccurate.

67. Defendant violated 15 U.S.C. § 1681s-2(a)(3) in knowing that the debt was disputed by Ms. Gilbert and in failing to provide to a CRA that the debt was disputed.

68. Defendant violated 15 U.S.C. § 1681s-2(a)(8)(e) because after receiving notice of numerous disputes and debt validation requests by Ms. Gilbert, Defendant failed to conduct an investigation with respect to the disputed information, review all relevant information provided by the consumer with the notice, complete an investigation within a 30-day period, and promptly notifying the CRAs.

69. Defendant also violated 15 U.S.C. § 1681s-2(b) in that after receiving notice of a dispute of the Debt from Equifax, Defendant failed to conduct an investigation, review all relevant information, report the results to the CRAs, and promptly modify, delete, and/or permanently block the reporting of the false Debt with the CRAs.

70. Defendant also violated in 15 U.S.C. § 1681s-2(7) in failing to inform Ms. Gilbert about negative information in the process of or already placed on a consumer's credit report within one month.

71. Defendant Phoenix's violations were not just negligent, but willful.

72. Pursuant to 15 U.S.C. 1681, Ms. Gilbert is entitled to actual or statutory damages, attorney's fees, and court costs, as well as punitive damages for willful violations.

## COUNT TWO
## VIOLATION OF THE FCRA
## 15 U.S.C. § 1681
## (AGAINST DEFENDANT *EQUIFAX*)

73. Plaintiff incorporated by reference paragraphs 1-58 of this Complaint as though fully set forth herein.

74. 15 U.S.C. 1681 regulates CRAs and information contained in credit reports.

75. Defendant Equifax is a "consumer reporting agency" under 15 U.S.C. § 1681a(f) because Defendant regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

76. Defendant Equifax violated 15 U.S.C. § 1681c(f) in that it received several notifications pursuant to section 1681s-2(a)(3) from Defendant Phoenix that information regarding Ms. Gilbert is disputed by Ms. Gilbert and failed to include the disputed information in the Report.

77. Defendant violated 15 U.S.C. § 1681e(a) in failing to maintain reasonable procedures to avoid violations of 15 U.S.C. § 1681c.

78. Defendant Equifax violated 15 U.S.C. § 1681e(b) in failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Gilbert.

79. Defendant Equifax violated 15 U.S.C. § 1681i(a)(1) in that after receiving notice of a dispute of the Debt by Ms. Gilbert, Equifax failed to conduct a reasonable investigation to determine whether the Debt was inaccurate and delete the Debt after it was not verified by Defendant Phoenix.

80. Defendant Equifax violated 15 U.S.C. § 1681i(a)(2) in failing to provide prompt notice of dispute to Defendant Phoenix when Ms. Gilbert disputed the Debt with Equifax.

81. Defendant Equifax violated 15 U.S.C. § 1681i(a)(4) in conducting its reinvestigation of the Debt in and failing to review and consider all relevant information submitted by Ms. Gilbert, including information she submitted from the original creditor.

82. Defendant Equifax violated 15 U.S.C. § 1681i(a)(5) in failing to modify and/or delete the Debt after it was proven inaccurate and unverifiable, reinserted the Debt without certifying the accuracy of the Debt, providing notice to Ms. Gilbert, and providing additional information.

83. Defendant Equifax violated 15 U.S.C. § 1681i(a)(6) and 15 U.S.C. § 1681i(a)(7) when it failed to provide any notice of any reinvestigation of the Debt to Ms. Gilbert and failed to provide any notice of any description of reinvestigation procedure.

84. Defendant Equifax violated 15 U.S.C. § 1681i(b) for failing to provide Ms. Gilbert with a statement of dispute after any reinvestigation that did not resolve the dispute.

85. Defendant Equifax violated 15 U.S.C. § 1681i(c) for failing to clearly note that the Debt was disputed by Ms. Gilbert.

86. Defendant Equifax violated 15 U.S.C. § 1681i(d) for failing to furnish to Ms. Gilbert notification of deletion of disputed information.

87. Pursuant to 15 U.S.C. 1681, Ms. Gilbert is entitled to actual or statutory damages, attorney's fees, court costs, and punitive damages for willful violations.

**COUNT THREE**
**VIOLATION OF THE FDCPA**
**15 U.S.C. §§ 1692-1692P**
**(AGAINST DEFENDANT *PHOENIX*)**

88. Plaintiff incorporated by reference paragraphs 1-58 of this Complaint as though fully set forth herein.

89. 15 U.S.C. §§ 1692-1692p regulates debt collectors in their efforts to collect debts. Congressional findings and declaration pursuant to 15 U.S.C. § 1692 found that there was "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which contributed to "personal bankruptcies, to marital instability, to the

loss of jobs, and to the invasions of individual privacy." Congress also found that existing laws and procedure for redressing these injuries were inadequate to protect consumers.

90. Plaintiff is a "consumer" pursuant to 15 U.S.C. 1692a(3).

91. The Debt is a "debt" pursuant to 15 U.S.C. § 1692a(5).

92. Defendant Phoenix is a "debt collector" pursuant to 15 U.S.C. § 1692a(6).

93. Defendant violated multiple sections of 15 U.S.C. 1692-1692p, including 15 U.S.C. 1692c(a)(1) and 1692d(5) by communicating with Ms. Gilbert on Saturdays, knowing such a time was inconvenient for Ms. Gilbert, and causing her telephone to ring or engaging her in telephone conversations repeatedly and continuously with intent to annoy, abuse, or harass Ms. Gilbert.

94. Defendant also violated 15 U.S.C. § 1691e(2) in falsely representing the character, amount, and legal status of the Debt.

95. Defendant also violated 15 U.S.C. § 1691e(8) in communication to the CRAs credit information it knew or should have known was false, including the failure to communicate that the Debt was disputed by Ms. Gilbert.

96. Defendant violated 15 U.S.C § 1692g(a-b) by failing to validate the Debt within the prescribed time or at any time and failing to provide notification required for a disputed debt.

97. Pursuant to 15 U.S.C. 1692k, Ms. Gilbert is entitled to actual and statutory damages, court costs, and attorney's fees.

### COUNT FOUR
### VIOLATION OF THE TCPA
### TEX. FIN. CODE §§ 392-392.404
### (AGAINST DEFENDANTS *PHOENIX* AND *CARLETON*)

98. Plaintiff incorporated by reference paragraphs 1-58 of this Complaint as though fully set forth herein.

99. Tex. Fin. Code §§ 392-392.404 regulates debt collectors collecting debt in the state of Texas.

100. In collecting on an alleged debt that was not incurred, in failing to verify the debt, and in reporting an unverified debt to the CRAs, Defendant violated Tex. Fin. Code § 392.303 prohibition against using unfair or unconscionable means in collecting a debt.

### COUNT FIVE
### VIOLATION OF THE TDPA
### (TEX. BUS. & COM. CODE §17.41-63)
### (AGAINST DEFENDANTS *PHOENIX* AND *CARLETON*)

101. Plaintiff incorporates by reference paragraphs 1-58 of this Complaint as though fully set forth herein.

102. Pursuant to Tex. Fin. Code §§ 392.404, a violation of the TCPA is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.

103. Pursuant to Subchapter E, Chapter 17, Business & Commerce Code, Ms. Gilbert is entitled to actual/economic damages, emotional and/or mental anguish damages, exemplary/punitive damages, and attorney's fees and costs.

104. Additionally, Plaintiff seeks an award of discretionary additional damages in an amount not to exceed three times the amount of economic damages for Defendant's conduct committed knowingly and/or an amount not to exceed three times the amount of economic and mental anguish damages for Defendant's conduct committed intentionally. Specifically, Ms. Gilbert seeks $20,931 in tremble damages, the trebled amount of the invalid Debt pursed against Ms. Gilbert.

105. Plaintiff seeks reasonable and necessary attorney's fees in this case through and to the time judgment is entered and for any post-trial or post-judgment appeals, to be detailed through a statement of services submitted at the appropriate time.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff GIA GILBERT requests that Defendants EQUIFAX, INC., CARLETON-SONTERRA PARTNERS, TOLTECA ENTERPRISES, INC. d/b/a THE PHOENIX RECOVERY GROUP each be cited to appear and answer herein and upon final hearing hereof, Plaintiff have judgment of and against Defendants as follows:

(1) an award enjoining Defendants from reporting and collecting the Debt;

(2) a declaratory judgment be entered that the conduct of Defendants complained of herein violated the FCRA, FDCPA, TCPA, and DTPA;

(3) an award for all actual damages, exemplary damages, emotional/mental anguish damages, all attorney's fees, costs of court, and pre-and post-judgment interest at the highest lawful rates;

(4) an award of $20,931 treble damages pursuant to the DTPA;

(5) an award of statutory damages pursuant to the FDCPA;

(6) an award of punitive damages in the amount of $500,000 pursuant to the FCRA;

(7) an award of costs and reasonable attorney's fees pursuant to the FCRA, FDCPA, TCPA, and DTPA;

(8) an award of discretionary additional damages in an amount not to exceed three times the amount of economic damages if Defendant's conduct is found to have been committed knowingly; or an amount not to exceed three times the amount of economic and mental anguish damages if Defendant's conduct is found to have been committed intentionally; and

(9) Any such other and further relief as may be just and proper.

Respectfully submitted,

**HYDE & SWIGART**

By: /s/ Ramona Ladwig
Ramona Ladwig
Bar No. 24092659
1910 Pacific Ave, Suite 14155
Dallas, TX 75201
Phone: (214) 880-6362
Fax: (800) 635-6425
Email: ramona@westcoastlitigation.com

*Attorney for Plaintiff Gia Gilbert*